**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| STREET SPIRIT IP LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:22-cv-01001-XR |
| | § | |
| MATCH GROUP, LLC, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

**DEFENDANT MATCH GROUP, LLC'S MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(B)(3), 12(B)(6), AND 12(B)(7)**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ................................................................................ 3

III.    LEGAL STANDARD ........................................................................................... 4

IV.     ARGUMENT ........................................................................................................ 5

        A.      Venue is Improper in this District ............................................................ 5

                1.      Match Group Does Not Reside in the Western District of Texas ............. 5

                2.      Match Group Does Not Have a Regular and Established Place of
                        Business in this District. .......................................................................... 6

                3.      Alleged Acts of Infringement Are Irrelevant Because Street Spirit
                        Cannot Show that Match Group Has a Regular and Established
                        Place of Business in this District. ........................................................... 10

        B.      The Claims of the '535 Patent Are Invalid Under 35 U.S.C. § 101. .................. 10

                1.      The Claims are Directed to an Abstract Idea Under Alice Step One ....... 12

                2.      The Claims Do Not Contain an Inventive Concept Under Alice
                        Step Two. ................................................................................................ 15

                3.      Claim 44 is Representative of the Remaining Claims. ............................ 17

        C.      Plaintiff Fails to Join Necessary Party Humor Rainbow. ..................................... 18

        D.      Plaintiff Fails to State a Claim for Injunctive Relief. .......................................... 20

        E.      Plaintiff Fails to State a Claim for Indirect and Willful Infringement ................. 20

V.      CONCLUSION .................................................................................................. 21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l,*
    573 U.S. 208 (2014)................................................................................10, 11, 12

*Apple, Inc. v. Ameranth, Inc.,*
    842 F.3d 1229 (Fed. Cir. 2016).................................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................2, 5

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
    827 F.3d 1341, 1349 (Fed. Cir. 2016)......................................................18

*Bell Atl. v. Twombly,*
    550 U.S. 544 (2007)...................................................................................2, 5

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
    681 F.3d 1323 (Fed. Cir. 2012).................................................................21

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.,*
    935 F.3d 1341 (Fed. Cir. 2019).................................................................2

*Commil USA, LLC v. Cisco Sys.,*
    575 U.S. 632 (2015)...................................................................................21

*Correct Transmission LLC v. ADTRAN, Inc.,*
    No. 6:20-cv-669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021).......................8, 9, 10

*In re Cray Inc.,*
    871 F.3d 1355 (Fed. Cir. 2017).................................................................6, 7, 8

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,*
    424 F.3d 1293 (Fed. Cir. 2005).................................................................21

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011).................................................................13

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388 (2006)...................................................................................2, 20

*Electric Power Grp. v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016).................................................................11

*Electronic Commc'n. Techs., LLC v. ShoppersChoice.com, LLC,*
    958 F.3d 1178 (Fed. Cir. 2020)..................................................................17

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016)..................................................................11

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.,*
    955 F.3d 1317 (Fed. Cir. 2020).........................................................2, 13, 15

*GreatGigz Sols., LLC v. ZipRecruiter, Inc.,*
    No. W-21-CV-00172-ADA, 2022 WL 432558 (W.D. Tex. Feb. 11, 2022)............6

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
    579 U.S. 93 (2016).................................................................................22

*HS Resources, Inc. v. Wingate,*
    327 F.3d 432 (5th Cir. 2003) ....................................................................19

*iLife Techs. iLife Techs., Inc. v. Nintendo of Am., Inc.,*
    839 F. App'x 534 (Fed. Cir. 2021) .............................................................14

*IngenioShare, LLC v. Epic Games, Inc.,*
    No. W-21-CV-00663-ADA, 2022 WL 827808 (W.D. Tex. Mar. 18, 2022)...........6, 8, 9

*Intellectual Ventures I, LLC v. Capital One Bank (USA), N.A.,*
    792 F.3d 1363 (Fed. Cir. 2015)..................................................................12

*Hood ex rel. Mississippi v. City of Memphis,*
    570 F.3d 625 (5th Cir. 2009) ....................................................................19

*In re Monolithic Power Sys., Inc.,*
    50 F.4th 157 (Fed. Cir. 2022) .................................................................9, 10

*Optic153 LLC v. Thorlabs Inc.,*
    No. 6:19-cv-667-ADA, 2020 WL 3403076 (W.D. Tex. June 19, 2020)................4

*Prism Techs. LLC v. T-Mobile USA, Inc.,*
    696 Fed. App'x. 1014 (Fed. Cir. 2017)..............................................13, 14, 17

*SAP America, Inc. v. InvestPic, LLC,*
    898 F.3d 1161 (Fed. Cir. 2018)..................................................................11

*Skinner v. Switzer,*
    562 U.S. 521 (2011).................................................................................5

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC,*
    137 S. Ct. 1514 (2017).............................................................................5, 6

*TDE Petroleum Data Solutions, Inc. v. AKM Enter.*,
  657 F. App'x. 991 (Fed. Cir. 2016) ...................................................................16

*Thales Visionix, Inc. v. United States*,
  850 F.3d 1343 (Fed. Cir. 2017)........................................................................11

*Timberlake v. Synthes Spine, Inc.*,
  No. V-08-4, 2011 WL 2607044 (S.D. Tex. June 30, 2011)..............................19

*TLI Commc'ns. LLC v. AV Auto., L.L.C.*,
  823 F.3d 607 (Fed. Cir. 2016)......................................................................2, 17

*Univ. of Fla. Research Found., Inc. v. GE Co.*,
  916 F.3d 1363 (Fed. Cir. 2019)........................................................................17

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018).........................................................................4

**Rules and Statutes**

28 U.S.C. § 1400(b) ..............................................................................1, 5, 6, 10

28 U.S.C. § 1406(a) ...........................................................................................5

35 U.S.C. § 101 ..........................................................................................1, 10

Fed. R. Civ. P. 8(a)(2) .......................................................................................5

Fed. R. Civ. P. 12(b)(7).........................................................................2, 19, 20

Fed. R. Civ. P. 12(b)(3).....................................................................................1

Fed. R. Civ. P. 12(b)(6).....................................................................................5

Fed. R. Civ. P. 19 .....................................................................................3, 19, 20

Plaintiff filed this case in an improper venue where Match Group, LLC does not reside or have a regular and established place of business.  Also, Plaintiff failed to join a necessary party—Humor Rainbow, Inc.—which operates the accused OkCupid service.  Further, the First Amended Complaint fails to state a claim upon which relief can be granted because the asserted patent claims ineligible subject matter.  Therefore, the Court should dismiss this case with prejudice.

## I.      **<u>INTRODUCTION</u>**

Pursuant to Rule 12(b)(3), the Court should dismiss Plaintiff Street Spirit IP LLC's ("Street Spirit") First Amended Complaint ("FAC") because venue is improper with respect to Defendant Match Group, LLC ("Match Group").  Alternatively, the Court may transfer the claims against Match Group to the Northern District of Texas.

The relevant venue statute provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  But Match Group does not reside or have a regular and established place of business in this District.  Instead, Match Group is a Delaware LLC with its headquarters in Dallas, its business is conducted online, and it has no place of business in this District.  Match Group's only employees working in this District all work *remotely* from their own homes for their own convenience—not as a job requirement or for Match Group's benefit.

The Court should also dismiss the FAC for failure to state a claim because the asserted patent, U.S. Patent No. 8,850,535 (the "'535 Patent"), fails to claim patent-eligible subject matter under 35 U.S.C. § 101.  The '535 Patent's claims encompass the abstract idea of controlling a user's access to certain content based on verifying the user's identity.  And they do no more than combine a series of well-known steps—implemented on a general-purpose computer using well-understood and routine functions—to carry out the abstract idea.  The Federal Circuit "ha[s]

- 1 -

repeatedly found the concept of controlling access to resources via software to be an abstract idea." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326-27 (Fed. Cir. 2020) (finding ineligible claims directed to the "*bare abstract idea* [of] controlling access to resources by receiving a request and determining if the request for access should be granted" (emphasis added) (citation omitted)).  Further, the '535 Patent's claims do not recite any inventive technological means that might transform them into patent-eligible subject matter.  The '535 Patent does not purport to improve the functioning of a computer or a network; indeed, any hardware recited by the Asserted Claims was conventional and well-known, as admitted by the patent's specification, and "merely provide[s] a generic environment in which to carry out the abstract idea." *TLI Commc'ns LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 612 (Fed. Cir. 2016).  Any plausible inventive concept in any of the '535 Patent's claims is coincident with "the abstract idea that the claims are directed to" and thus "cannot be an inventive concept."  *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019).

The FAC also fails to state a claim because its demand for injunctive relief and claims for indirect and willful infringement are deficient.  Street Spirit has not satisfied the *eBay* factors by plausibly alleging *any* facts supporting its requested relief for an injunction.  Further, none of its infringement allegations satisfy the *Twombly* and *Iqbal* standard.  Regarding its indirect-infringement allegations, Street Spirit fails to sufficiently allege (1) direct infringement or (2) pre-suit knowledge required for indirect and willful infringement.

Finally, the Court should dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(7) because it accuses the OkCupid service of infringement, but OkCupid is owned and operated by Humor Rainbow, Inc. ("Humor Rainbow")—not Match Group.  *See* FAC. at ¶ 10, Ex. B.  The Court cannot accord complete relief between only Street Spirit and Match Group, and

resolving Street Spirit's claims of infringement against an unnamed party would impair Humor Rainbow's ability to protect its interests, and leave it exposed to substantial risk of incurring multiple or otherwise inconsistent obligations.   Therefore, Humor Rainbow is an indispensable party under Rule 19.

Street Spirit's failure to properly plead its FAC has and will materially prejudice Match Group's ability to prepare its defenses to Street Spirit's claims.   Therefore, the Court should dismiss Street Spirit's claims with prejudice.

## II.   <u>FACTUAL BACKGROUND</u>

On September 23, 2022, Street Spirit filed its Original Complaint for Patent Infringement against "Match Group, Inc., dba okcupid.com and tinder.com" (Dkt. 1, "Original Complaint"), alleging that Tinder and OkCupid infringe "one or more of claims 1-44" of the '535 Patent. Original Compl. at ¶ 10, Ex. B (infringement chart mapping only claim 44 to OkCupid functionality), Ex. C (infringement chart mapping only claim 44 to Tinder functionality).   On November 11, 2022, Street Spirit served the Original Complaint on Match Group, Inc.  *See* Dkt. 6.  Match Group's counsel notified Street Spirit's counsel that Match Group, <u>Inc</u>. does not own or operate OkCupid or Tinder, let alone "dba okcupid.com and tinder.com" and that Match Group, <u>LLC</u> (which owns and operates Tinder) and Humor Rainbow, Inc. (which owns and operates OkCupid) are the proper parties, and venue in this District is improper.  *See* Ex. A (December 20, 2022, email to W. Ramey).  Street Spirit's counsel agreed to amend the Complaint but disagreed regarding venue.  *Id*.  On January 9, 2023, Street Spirit filed the FAC, which changed the sole Defendant to Match Group, LLC but is substantively the same as the Original Complaint.  The FAC does not name Humor Rainbow as a party yet maintains that Tinder *and* OkCupid allegedly infringe one or more claims of the '535 Patent.  *See* FAC. at ¶ 10, Ex. B, Ex. C.

Street Spirit alleges that venue is proper in this District because it claims Match Group (1) "has employees working remotely with company equipment" in this District; and (2) "committed acts of infringement and has a regular and established place of business in this District." *See id.* at ¶¶ 2, 3, 6.  However, Match Group does not own or lease any established place of business in the Western District of Texas.  Declaration of Tim Beck (Ex. B, "Decl.") at ¶ 6.  Of Match Group's approximately 2,653 employees worldwide, approximately 18 are in this District, but they work from their homes and the only "equipment" they have from Match Group is normal home-office equipment (such as laptops, monitors, and printers).  *Id.* at ¶¶ 8, 13.  Match Group does not own or rent any portion of, or store any inventory in, these employees' homes.  *Id.* at ¶¶ 8-9.  And these employees work in this District only because it is where they happen to live.  Match Group does not require any employees to live in, or work from, Austin, Texas, or any other location in this District.  *Id.* at ¶ 11.  In fact, these employees would be able to work remotely from or relocate to, e.g., Texarkana if they chose to, or even to Dallas and work from Match Group's headquarters.  *Id.*  Match Group's business is online dating, and these remote employees do not service customers in this District.  *Id.* at ¶ 12.  To the extent Match Group provides any equipment to its employees in this District, it is limited to standard office equipment.  *Id.* at ¶ 13.

## III.   LEGAL STANDARD

Street Spirit "bears the burden of establishing proper venue" under 28 U.S.C. § 1400(b). *See In re ZTE (USA) Inc.,* 890 F.3d 1008, 1013 (Fed. Cir. 2018); *see also Optic153 LLC v. Thorlabs Inc.,* No. 6:19-cv-667-ADA, 2020 WL 3403076, at *1 (W.D. Tex. June 19, 2020).  And in patent cases, venue is proper only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1516 (2017).  So, if Street Spirit fails to establish that Match Group either resides here or has a regular

and established place of business here, venue is improper in this District, and the Court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Federal Rule of Civil Procedure 8(a)(2) "generally requires only a plausible 'short and plain' statement of the plaintiff's claim," showing that the plaintiff is entitled to relief.  *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).  But to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  (citing *Twombly*, 550 U.S. at 555).

The relevant inquiry under *Iqbal/Twombly* is whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  *Iqbal*, 556 U.S. at 679.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678.  In other words, a plausible claim must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content.  *Id*.

## IV.   ARGUMENT

### A.   Venue is Improper in this District.

#### 1.   Match Group Does Not Reside in the Western District of Texas.

"[A] domestic corporation 'resides' only in its state of incorporation for purposes of the patent venue statute."  *TC Heartland,* 137 S. Ct. at 1517.  Street Spirit admits that Match Group is incorporated in Delaware, not Texas.  FAC at ¶ 2; *see also* Decl. at ¶ 4.  Thus, Street Spirit cannot

establish venue under the first prong of the venue statute because Match Group does not "reside" in this District.  *See* 28 U.S.C. § 1400(b).

        2.    <u>Match Group Does Not Have a Regular and Established Place of Business in this District.</u>

Under the second prong of the patent venue statute, which requires that a defendant have a regular and established place of business in this District, Street Spirit must satisfy three requirements:  "(1) [T]here must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.,* 871 F.3d 1355, 1360 (Fed. Cir. 2017).  Because Match Group does not have a physical place of business in this District, venue is not proper here.  *See* Decl. at ¶¶ 6-13.

Street Spirit pleads that Match Group "has employees working remotely with company equipment in the Western District of Texas."  FAC at ¶ 2.  However, as the Federal Circuit made clear in *Cray*, because the fact that a "defendant's employee owns a home in which he carries on some of the work that he does for the defendant" does not establish venue in the district of the employee's home.  *See Cray*, 871 F.3d at 1365; *see also GreatGigz Sols., LLC v. ZipRecruiter, Inc.*, No. W-21-CV-00172-ADA, 2022 WL 432558, at *4 (W.D. Tex. Feb. 11, 2022) ("The mere presence of employees in the District is insufficient to satisfy a regular and established place of business of [defendant]."); *see also IngenioShare, LLC v. Epic Games, Inc.*, No. W-21-CV-00663-ADA, 2022 WL 827808, at *2 (W.D. Tex. Mar. 18, 2022) ("Time and again, this Court has rejected remote employees as a basis for establishing venue under similar facts.  And, while Plaintiff tries to support its argument with nuanced arguments of Zoom policies enforced at home, stipends, and location restrictions, such arguments still do not meet the demands of venue set out by the Federal Circuit.").  Rather, venue is proper only when such employee homes have been established or ratified by the defendant.  *See Cray*, 871 F.3d at 1363.  And in determining whether an employee's

home has been ratified by the defendant, courts consider the following factors:  (1) "[W]hether the defendant owns or leases the place, or exercises other attributes of possession or control over the place;" (2) "whether the defendant conditioned employment on an employee's continued residence in the district;" (3) "the storing of materials at a place in the district so that they can be distributed or sold from that place;" and (4) "marketing or advertisements . . . to the extent they indicate that the defendant itself holds out a place for its business."  *Id.*  Street Spirit's pleading satisfies none of these factors.  And since this is the FAC's only venue allegation, venue in this District is improper.

On the contrary, considering the factors confirms that Match Group has not ratified the employees' homes.  First, Match Group's remote employees work from their own homes—Match Group does not own, rent, or control any portion of them.  Decl. at ¶¶ 8-9.  Second, Match Group's employees in this District work from their homes for reasons of personal convenience—none are required to work from this District as a condition of their employment.  *Id.* at ¶ 11.  Third, Match Group does not store any inventory at these remote employees' homes, let alone distribute inventory from their homes, since Match Group does not generally distribute or sell inventory in its business at all.  *Id.* at ¶ 9.  Fourth, Match Group has never publicly held out online, in print, or in any other form, a location in this District (let alone the homes of its remote employees) as a place of business of Match Group.  *Id.* at ¶ 10.

Given that Match Group has taken no action to establish or ratify its remote employees' homes as Match Group's places of business, these homes do not satisfy the *Cray* test, and therefore, do not support venue.  *Cray*, 871 F.3d at 1363.  *Correct Transmission* and *IngenioShare* are illustrative.  In that case, a court in this District found the defendant did not have a regular and established business in this District despite remote employees whose homes were here.  *Correct*

*Transmission LLC v. ADTRAN, Inc.*, No. 6:20-cv-669-ADA, 2021 WL 1967985, at *4 (W.D. Tex. May 17, 2021). Specifically, the home offices failed the *Cray* test because the employees worked in Austin on their "own accord, not because of any requirement by [the defendant]," and the defendant "d[id] not own, rent, or lease any portion of [the employee's] home, nor d[id] it store inventory there." *Id.* (internal quotation marks omitted). Accordingly, the defendant never "established or ratified" its employees' homes and they did not constitute regular and established places of business. *Id.* Match Group's employees' home offices do not qualify as Match Group's regular and established places of business for at least the same reasons. *See* Decl. at ¶¶ 7-12.

Likewise, in *IngenioShare*, the court determined venue was improper where the defendant "d[id] not own, lease, or rent any portion of the homes of its twenty Austin employees," notwithstanding the defendant having provided a $5,000 work stipend and requiring its employees to participate in Zoom meetings. *IngenioShare*, 2022 WL 827808, at *3. The court noted, "it bears repeating, the relevant inquiry is whether [the defendant] controls the *place, not the conduct,* of its employees . . . . Focus on the place is directly tied to the statute and cannot be sidestepped." *Id*. (emphasis added).

Street Spirit may argue that *In re Monolithic Power Sys., Inc.*, 50 F.4th 157 (Fed. Cir. 2022) is to the contrary, but it is not. In *Monolithic*, the Federal Circuit denied mandamus where defendant ratified its employees' homes by virtue of its "history of soliciting employees to work in the Western District to support [its] local OEM customers in that district and the extent and type of laboratory equipment and product maintained in the homes of those employees." *Monolithic*, 50 F.4th at 160. Thus, *Monolithic* is consistent with *Correct Transmission* and *IngenioShare*, and likewise does not support venue here.

- 8 -

Nevertheless, *Monolithic* is easily distinguished from this case's facts:  First, Match Group does not solicit employees to work in this District.  Decl. at ¶ 14.  There are no Match Group job postings specifically directed to this District.  *Id*.[1]  Further, the remote employees in this District are not required to support customers in this District.  *Id*. at ¶ 12.  Second, Match Group does not supply its remote employees with equipment like the specialized equipment at issue in *Monolithic*. While Monolithic "provided certain employees in the Western District with lab equipment or products to be used in or distributed from their homes as part of their responsibilities" (50 F.4th at 159), Match Group only supplies all its employees (regardless of region or remote status) with standard office equipment.  Decl. at ¶ 13.  This is far from the specialized equipment of *Monolithic*, e.g., "two oscilloscopes, four to five power supplies, two electric loads, a logic analyzer, a soldering iron, a multimeter, a function generator, three to five samples of microcontrollers, MOSFETs, five op-amps, ten to fifteen comparators, twenty inductors, and fifty sample demonstration boards."  50 F.4th at 160.  Indeed, the equipment in *Monolithic* was "'not typically found in a generic home office,' for 'the sole purpose of allowing Mr. Bone to conduct testing and validation as part of his job.'  Specifically, Mr. Bone uses these in-home tools and equipment to conduct validation tests for at least one of Monolithic's in-district customers."  *Id*. (internal citations omitted).  Accordingly, since Match Group does not have a physical place of business in this District, venue is not proper.

---

[1] During a meet and confer regarding venue, Street Spirit's counsel mentioned a recent job listing for "The League" listed its location as Austin, TX.  However, "The League" is owned and operated by The League App, Inc., a completely separate entity than Match Group and Humor Rainbow and that is unrelated to Tinder or OkCupid.  Decl. at ¶ 15.  But even if The League job posting could be considered (it cannot), the Austin, Texas location was for a remote position that was not limited to only Austin, Texas.  Indeed, The League filled this position with a candidate who will work remotely from Colorado.  *Id*. at ¶ 16.  The League does not have any positions that require the employee to be in Austin but a remote employee for The League could live in Austin if he or she chooses.  *Id*.  So, even though a separate company's activities are irrelevant, those activities still would not suffice to establish venue.

3.      Alleged Acts of Infringement Are Irrelevant Because Street Spirit Cannot Show that Match Group Has a Regular and Established Place of Business in this District.

Street Spirit attempts to connect Match Group to this District by generically stating that Match Group "has committed acts of infringement and has a regular and established place of business in this District.  FAC at ¶ 6.  As shown, Street Spirit cannot satisfy its burden to show that Match Group has a regular and established place of business here.  Accordingly, under the second prong of the patent venue statute, allegations regarding acts of infringement in this District are irrelevant.  *See* 28 U.S.C. § 1400(b) (requiring that defendant "has committed acts of infringement ***and*** has a regular and established place of business" (emphasis added)); *Correct Transmission*, 2021 WL 1967985 at *3 (venue not proper regardless of alleged acts of infringement as the defendant lacked a regular and established place of business in the district).

## B.      The Claims of the '535 Patent Are Invalid Under 35 U.S.C. § 101.

The patent statute provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor."  35 U.S.C. § 101.  But Section 101 "contains an important implicit exception:  Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation mark and citation omitted).  A claim is invalid under Section 101 where:  (1) it is "directed to" a patent-ineligible concept, such as an abstract idea, and (2) the particular elements of the claim, considered "both individually and as an ordered combination," do not add enough to "transform the nature of the claim into a patent-eligible application," i.e., do not set forth an "inventive concept."  *Alice*, 573 U.S. at 217 (internal quotation marks and citation omitted); *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166-67 (Fed. Cir. 2018).

At *Alice* Step One, courts "must first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 583 U.S. at 218. This requires "looking at the 'focus' of the claims, their 'character as a whole,'" to determine if they are directed to excluded subject matter. *Electric Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal citation omitted). The Federal Circuit has held claims ineligible when "they merely collect electronic information, display information, or embody mental processes that could be performed by humans." *Thales Visionix, Inc. v. United States*, 850 F.3d 1343, 1346-47 (Fed. Cir. 2017). With computer-related patents, the critical distinction is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). "[A] claim that merely describes an 'effect or result dissociated from any method by which [it] is accomplished' is not directed to patent-eligible subject matter." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed. Cir. 2016) (internal citations omitted).

At *Alice* Step Two, courts search for an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" by looking at "[w]hat else is . . . in the claims," beyond the abstract idea to which the claims are directed. *Alice*, 573 U.S. at 217-18 (internal quotation mark and citation omitted). There is nothing inventive about applying an abstract idea using "well-understood, routine, conventional activit[ies] previously known to the industry." *Id.* at 225. Nor does "[a] simple instruction to apply an abstract idea on a computer . . . provide a sufficient inventive concept." *Intellectual Ventures I, LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

1.      The Claims are Directed to an Abstract Idea Under Alice Step One.

The '535 Patent's claims are directed to the abstract idea of controlling a user's access to

certain content based on verifying the user's identity.  The '535 Patent includes four independent

claims: claims 1, 37, 43, and 44. Claim 44, which is representative, recites:

> 44. A method of providing customer relationship management for a network, the method comprising:
>
> creating member account profiles for members using identification components for identifying members;
>
> generating an identity rating for each member using initial rating factors including: a number of identification components and a quality of identification components;
>
> determining member identity rating thresholds for identity rating-restricted content access;
>
> authenticating a member attempting to access the network;
>
> managing the member's identity rating in real-time, wherein the member's identity rating is alterable in real-time by monitoring member identity rating-altering factors including keystroke patterns and language analysis; and
>
> providing content access to a member based on the managed identity ratings.

'535 Patent at claim 44.  Claim 44's abstract idea of controlling access to content uses known

identity management techniques, e.g., (1) creating account profiles for identifying members, (2)

generating identity ratings for those members (e.g., with number/quality of identification

components), (3) determining thresholds for restricted content access, (4) authenticating a

member, (5) managing the member's identity rating (e.g., with keystroke and language analysis),

and (6) providing content access.

As the Federal Circuit has repeatedly found, "[c]ontrolling access to resources" is an

abstract idea because it "is exactly the sort of process that 'can be performed in the human mind,

or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Ericsson*,

955 F.3d at 1327 (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed.

Cir. 2011)); *Universal Secure Registry*, 10 F.4th at 1347 ("[P]roviding restricted access to resources" is an abstract idea).  Indeed, the Federal Circuit has repeatedly found claims directed to similar concepts abstract.  *See, e.g., Smartflash LLC*, 680 F. App'x 977 at 982 (Fed. Cir. 2017) (finding "controlling access to content data, such as various types of multimedia files, and receiving and validating payment" "directed to the abstract idea of conditioning and controlling access to data based on payment").  For example, in *Prism Techs.*, the Federal Circuit found the similar steps of "receiving" identity data of a client computer, "authenticating" the identity of the data by an "authentication server," "authorizing" the client computer, and "permitting access" to the client computer to be directed to the abstract idea of "providing restricted access to resources." *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 Fed. App'x. 1014, 1017 (Fed. Cir. 2017); *see also Universal Secure Registry*, 10 F.4th at 1353 (holding "like the claims at issue in *Prism*" claims directed to a method for enabling a transaction between a user and a merchant, where the merchant is given a time-varying code used to access a database that indicates any restrictions on the user's transactions with the merchant, were abstract).

> The claims here are no different.  On its face, the claimed invention is directed to
>
> identity verification and identity management, and in particular, to methods and systems for identifying individuals, identifying users accessing one or more services over a network, determining member identity ratings, and based on member identity ratings that restrict access to network-based content and certain user-to-user interactions.

'535 Patent at Abstract.  But the Federal Circuit has already held that "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources" is abstract.  *Prism Techs.*, 696 F. App'x at 1017.  Further, the steps of creating account profiles, generating identity ratings, determining thresholds for restricted content access, and managing the

- 13 -

member's identity rating, are no more than gathering and processing data—concepts the Federal Circuit found abstract in *iLife Techs*. *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 536-37 (Fed. Cir. 2021).

Indeed, these concepts have long been used in numerous settings where preventing unauthorized use of content is important.  For example, for as long as media has been distributed, whether it be electronic content or non-electronic content, there has been a need to control its use. In the electronic content context, the claimed steps of Claim 1 were well-known in the information technology ("IT") context:

| '535 Patent, Claim 44 | Analogy |
|---|---|
| [535.44p] A method of providing customer relationship management for a network, the method comprising: | A method where a company's IT manager monitors and controls employees' use of sensitive content on the company's network: |
| [535.44a] creating member account profiles for members using identification components for identifying members; | The IT manager creates profiles for the employees using various sources of identification, e.g., social security card, birth certificate, passport, driver's license, etc.[2] |
| [535.44b] generating an identity rating for each member using initial rating factors including: a number of identification components and a quality of identification components; | The IT manager generates identity ratings for each of the employees based on the numbers and quality of the sources of identification, e.g., higher rating if multiple forms of ID are provided. |
| [535.44c] determining member identity rating thresholds for identity rating-restricted content access; | The IT manager determines identity rating thresholds for content access, e.g., must have a certain number of sources of identification to access certain content. |
| [535.44d] authenticating a member attempting to access the network; | The IT manager monitors the network and who is trying to access content and authenticates whoever is trying to access the content. |
| [535.44e] managing the member's identity rating in real-time, wherein the member's identity rating is alterable in real-time by monitoring member identity | The IT manager manages the employee's identity rating by monitoring the employee's keystroke and language |

---

[2] The '535 Patent states that "identification components" correspond to "identity credentials." '535 Patent at 19:54 ("identify [sic] credentials (i.e., identification components)").  "Identity credentials" include "social security card, birth certificate, passport, government issued ID, driver's license, school or educational institution issued ID, and the like." *Id*. at 19:49-52.

| '535 Patent, Claim 44 | Analogy |
|---|---|
| rating-altering factors including keystroke patterns and language analysis; and | patterns, e.g., whether an imposter may be attempting to pass as another employee, but the IT manager notices that they are not responding in a way that is typically characteristic for that person.[3] |
| [535.44f] providing content access to a member based on the managed identity ratings. | The IT manager provides access to content if the employee passes the above identity checks. |

Accordingly, the claimed method of controlling a user's access to certain content based on verifying the user's identity "is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper.'" *Ericsson*, 955 F.3d at 1327.  As such, the Court should find that claim 44 is directed to an abstract idea.

2.      The Claims Do Not Contain an Inventive Concept Under Alice Step Two.

The '535 Patent's claims' limitations do not recite an inventive concept, either individually or as an ordered combination, to transform the claimed invention into patent-eligible subject matter.  As described above, the recited identity and verification techniques are methods of collecting and analyzing data, which are themselves abstract processes.  As abstract processes, these evaluation techniques cannot provide an inventive concept.

And even if they were not abstract, these processes were each well-known, routine, and conventional.  For example, the specification recites only generic hardware that implements the abstract method and states that the disclosed embodiments "may refer to a Personal Computer ('PC') system or data device, other computer or electronic systems may be used as well, such as, without limitation, an interactive television, a network-enabled personal digital assistant ('PDA'), a network game console, a networked entertainment device, a smart phone (e.g., with an operating

---

[3] The '535 Patent admits monitoring keystroke patterns was well-known.  *Id*. at 13:12-16 ("One factor for use in determining a member's identity rating is the member's keystroke dynamics. Otherwise stated, a member's unique way of typing may be compared across sessions using sophisticated algorithms that are known in the art.").

system and on which a user may install applications) and the like."  '535 Patent at 4:49-56; *id*. at 5:34-36 ("the IDM system 1000 also is administered via a data terminal 140 which is used by authorized administrative personnel.").  And the various techniques recited in the claims—e.g., factors used to determine and manage identity ratings—were simply conventional and well-known methods of gathering and analyzing data.  *See* '535 Patent at 7:58-13:68 (describing well-known identity rating factors including "User Name," "Password," "IP Address," "Recognized Device," "Dynamic Access Code," "Parental Sponsor Access Code," "Personal Security Questions," "Location," "Hand/Palm Scan," "Fingerprint Scan," "Iris Scan," "Facial Recognition Image," "Voice Recognition," "Vein Scan," "Keystroke Dynamics/Patterns," "Communication Methods," "Suspicious Language/Phrases," and "Language Style"); *see TDE Petroleum Data Solutions, Inc. v. AKM Enter.*, 657 F. App'x. 991, 993 (Fed. Cir. 2016) ("storing, gathering, and analyzing data" is an "abstract idea.").

Thus, claim 44 recites only generic computer components performing generic computer functions to affect a predictable result.  And the combination of the elements reflects the logical order of performing the abstract idea: when conditioning access based on identity of a member, first verify and manage the identity of the member using various techniques, and then grant access if identification is verified.

Indeed, the Federal Circuit has found that claims like the '535 Patent's claims do not contain an inventive concept under Step Two.  *See, e.g.*, *Univ. of Fla. Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1368-69 (Fed. Cir. 2019) (the claims were not "a technical improvement over prior art" because they "recite[d] the abstract idea of 'collecting, analyzing, manipulating, and displaying data,' and [the patent] propose[d] using 'a general-purpose computer to carry it out.'"); *Prism Techs.*, 696 F. App'x at 1017 (conventional generic computer components employed in a

customary manner insufficient to transform an abstract idea into a patent-eligible invention); *TLI Commc'ns.*, 823 F.3d at 615 ("[S]teps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent eligibility."); *Electronic Commc'n. Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181 (Fed. Cir. 2020) ("[E]nabling a first party to input authentication information, storing the authentication information, and providing the authentication information" along with other data is abstract and not an inventive concept).

3.   Claim 44 is Representative of the Remaining Claims.

Claim 44 is representative of the remaining claims of the '535 Patent.  Independent claims 1, 37, and 43 share the same features as claim 44.  Each of the claims include the same "creating," "generating," "determining," "authenticating," and "managing" steps as claim 44.  For the claimed "initial rating factors," in addition to including the same "number [and] quality of identification components," claims 1, 37, and 43 further include "presence of an in-person authentication," which does not alter the above analysis.  Indeed, requiring in-person authentication is merely storing, gathering, and analyzing data *in-person*, that can be performed in the human mind, or by a human using a pen and paper.  '535 Patent at 2:42-44 ("identity verification services including . . . in-person authentication by an authorized agent.").  Another minor difference between the claims is that instead of providing "content access . . . based on the mange identity ratings" (claim 44), claims 1, 37, and 43 recite providing "member-to-member restrictions using the managed identity ratings" and "blocking access by unauthorized individuals," which is one and the same.  Whether providing or blocking access—both control access to content in an abstract way using the same well-understood, routine, and conventional techniques.

The dependent claims include minor variations of the same abstract subject matter, and are likewise limited to well-understood, routine, and conventional techniques, e.g., in-person authentication by an authorized agent, law enforcement, network sponsoring agent, school,

parental sponsor (claims 2-7), examples of identification (claim 8), examples of identity factors (claim 9-11), where a parental or network sponsor can alter identity ratings (claims 12-15), where member attributes are used to provide or control the types of service available (claims 16-18), examples of identity rating-restricted services and factors (claims 19-22), prompting a member regarding types of factors (claim 23), enabling a parental sponsor to view activities (claims 24-26), alerting a parental sponsor of activities (claims 27-29), where a minor member or parental sponsor is made aware of ratings (claims 30-33), where a parental sponsor controls access to the system (claims 34-36), and where the network is a social media, dating service, e-commerce, on-line auction, or on-line marketing network (claims 38-42). The forgoing features do not provide any inventive concept, either alone or in combination with the independent claims, that would permit a finder of fact to determine that they contain "significantly more than the abstract concept." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). Accordingly, the Court should find that each of the '535 Patent's claims is invalid as directed to patent-ineligible subject matter.

### C.    Plaintiff Fails to Join Necessary Party Humor Rainbow.

Street Spirit accuses the OkCupid service of infringement, but Match Group does not own or operate OkCupid, Humor Rainbow, Inc. does. Like Match Group, Humor Rainbow is also based in Dallas, Texas and does not have a place of business in this District—making venue improper in this District. Decl. at ¶ 4. Accordingly, Street Spirit's claims against OkCupid must be dismissed because joinder would make venue improper. *See* Fed. R. Civ. P. 19(a)(3).

Federal Rule of Civil Procedure 12(b)(7) allows dismissal for "failure to join a party under Rule 19." Rule 19 "provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue . . . [and] the dismissal of litigation that should not proceed in the absence of parties that cannot be joined." *HS Resources, Inc. v. Wingate*,

327 F.3d 432, 438 (5th Cir. 2003) (citations omitted).  Determining whether to dismiss a case for

failure to join an indispensable party requires a two-step inquiry.  The district court must first

determine whether the party should be added under the requirements of Rule 19(a).  Rule 19(a)(1)

requires that a person subject to service of process and whose joinder will not deprive the court of

subject-matter jurisdiction be joined if:

> (A) in that person's absence, the court cannot accord complete relief among
> existing parties; or (B) that person claims an interest relating to the subject
> of the action and is so situated that disposing of the action in the person's
> absence may: (i) as a practical matter impair or impede the person's ability
> to protect the interest; or (ii) leave an existing party subject to a substantial
> risk of incurring double, multiple, or otherwise inconsistent obligations
> because of the interest.

*Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009) (quoting Fed. R.

Civ. P. 19(a)(1)).  Furthermore, "[i]f a person has not been joined as required, the court must order

that the person be made a party."  Fed. R. Civ. P. 19(a)(2).  However, "[i]f a joined party objects

to venue and the joinder would make venue improper, the court must dismiss that party."  Fed. R.

Civ. P. 19(a)(3).  "In ruling on a dismissal for lack of joinder of an indispensable party, a court

may go outside the pleadings and look to extrinsic evidence." *Timberlake v. Synthes Spine, Inc.*,

No. V-08-4, 2011 WL 2607044, at *2 (S.D. Tex. June 30, 2011) (quotation omitted)

Humor Rainbow is a necessary party under Rule 19(a)(1) because it owns and operates the

OkCupid service.  Accordingly, a determination of infringement would impair its ability to protect

its interests, and leave it exposed to substantial risk of incurring double, multiple, or otherwise

inconsistent obligations.  *See* Fed. R. Civ. P. 19(a)(1)(B)(i)–(ii).  As Match Group's counsel

informed Street Spirit's counsel shortly after Street Spirit filed the Original Complaint, Match

Group does not maintain, operate, or administer OkCupid.  Instead, OkCupid is owned by Humor

Rainbow.  *See* Decl. at ¶ 4; *see also* Ex. A.  It naturally follows that Humor Rainbow must be

afforded an opportunity to defend against Street Spirit's claims of infringement directed to a

service it owns and operates.  Therefore, considering Street Spirit's current allegations, Humor Rainbow is a necessary party.  Because Street Spirit has refused to join Humor Rainbow, failed to plausibly allege that OkCupid is attributable to Match Group, and failed to plausibly allege that Match Group infringes the '535 Patent via the distribution of OkCupid, pursuant to Federal Rule of Civil Procedure 12(b)(7), the Court should dismiss Street Spirit's claims of infringement related to OkCupid.

> **D.      Plaintiff Fails to State a Claim for Injunctive Relief.**

The Court should also dismiss Street Spirit's request for a permanent injunction because its cursory allegations cannot state a claim for injunctive relief.  Under the *eBay* standard, a patentee seeking an injunction must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  Street Spirit fails to allege any of the above *eBay* factors required for injunctive relief. Instead, it merely states in its Prayer for Relief that it seeks "a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patents-in-Suit."  FAC at 4.  This bare request lacks any factual basis.

> **E.      Plaintiff Fails to State a Claim for Indirect and Willful Infringement.**

Street Spirit's induced infringement claims should be dismissed because the FAC does not (1) adequately plead direct infringement by Match Group's customers, (2) contain facts plausibly showing that Match Group specifically intended for its customers to infringe the asserted patent, and (3) contain facts plausibly showing that Match Group knew that the customer's acts constituted infringement.  *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d

1323, 1339 (Fed. Cir. 2012).  The FAC merely recites boilerplate language without any plausible facts that Match Group had the required "specific intent" to induce infringement.  FAC at ¶ 11; *In re Bill of Lading*, 681 F.3d at 1339.  Similarly, Street Spirit's contributory infringement claims should be dismissed because the FAC does not plausibly allege (1) an act of direct infringement, (2) that the defendant "knew that the combination for which its components were especially made was both patented and infringing," and (3) that the components have "no substantial non-infringing uses."  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005).  Again, the FAC merely recites boilerplate language without any plausible facts to show contributory infringement.  FAC at ¶ 12.

Moreover, Street Spirit has not and cannot show that Match Group had any pre-suit knowledge of the '535 Patent, which is fatal to Street Spirit's indirect infringement claims.  *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 639 (2015) ("Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.").

Street Spirit's claim for willful infringement and enhanced damages should be dismissed for failure to plead (1) pre-suit knowledge of the '535 Patent and (2) egregious conduct.  A claim for willful patent infringement must allege that infringement was "intentional or knowing."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 94 (2016).  However, the FAC's Prayer for Relief merely states "declare Defendant's infringement to be willful and treble the damages" (FAC at 4), without a single factual allegation regarding any egregious conduct by Match Group.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss this action.

Dated: March 20, 2023

Respectfully submitted,

/s/ *Robert Greeson*
    Robert Greeson
Texas Bar No. 24045979
robert.greeson@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200

Erik Janitens
Texas Bar No. 24097878
erik.janitens@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel: (713) 651-5151
Fax: (713) 651-5246

Gabriel Culver
Texas Bar No. 24116240
gabriel.culver@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Tel: (512) 474-5201
Fax: (512) 536-4598

*Attorneys for Defendant Match Group, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 20, 2023, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ *Robert Greeson*
Robert Greeson

- 22 -